UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KESHAWN HOPKINS, | No. 2:12-cv-896-TLN-EFB P |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| CDCR, et al., | |
| Defendants. | |

Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983. Defendants Naseer and Abraham have filed motions for summary judgment. ECF Nos. 54, 72. Plaintiff filed oppositions to both motions. ECF Nos. 59, 77. Naseer filed a reply to plaintiff's opposition, ECF No. 63, as did Abraham, ECF No. 80. For the reasons that follow, it is recommended that defendants' motions for summary judgment be granted.

I.  **BACKGROUND**[1]

On August 3, 2009, plaintiff was incarcerated at Mule Creek State Prison ("MCSP"), and he had a prescription for "50 milligrams of methadone three-times daily." ECF No. 15 at 2, 4.

/////

/////

---

[1] This action proceeds on plaintiff's First Amended Complaint ("FAC"). *See* ECF No. 15. The following statement of facts is based entirely on the allegations in the FAC.

1

When plaintiff "was presented his noon medication," defendant Abraham[2] dumped pre-crushed powder into plaintiff's cup of water. *Id.* at 4. After consuming the medication, plaintiff felt dizzy, drowsy, and extremely light-headed; he also vomited. *Id.* at 5.

After vomiting, plaintiff contacted the correctional officer that had escorted Abraham as she distributed medication. *Id.* Plaintiff asked that the correctional officer verify that Abraham had provided the correct medication. *Id.* Five to eight minutes later, the correctional officer reported that "Abraham checked and said it was the right med[ication]." *Id.* Plaintiff lied down and fifteen minutes later Abraham was at his cell. *Id.* When plaintiff explained his symptoms, Abraham stated that she had given the correct medication and departed. *Id.*

Five minutes later, Abraham's supervisor, Humphries, informed plaintiff that Abraham had mistakenly administered 150 milligrams of morphine instead of the prescribed fifty milligrams of a methadone. *Id.* After Humphries measured plaintiff's vital signs, plaintiff was "placed back into cell with no further follow-up treatment." *Id.* When Abraham visited plaintiff, plaintiff asked if he was going to receive charcoal to counter the medication. *Id.* Plaintiff's inquiry was based on experience: he had also mistakenly received 150 milligrams of morphine in lieu of his prescribed fifty milligrams of methadone on May 23, 2009; the treatment for that incident included liquid charcoal, which plaintiff was told to consume because it would counter the medication. *Id.* at 2, 4.[3] Abraham replied that plaintiff would not receive charcoal because defendant Nasser, a medical doctor, had only ordered that plaintiff's vital signs be checked. *Id.* at 5. "Plaintiff vomited three additional times and received no further medical attention." *Id.* The following morning, plaintiff felt "a little drowsy," but did not experience any "serious effects."

---

[2] Although the FAC alleges that Abraham is a licensed physician technician, ECF No. 15 at 4, Abraham's declaration indicates that she is a licensed vocational nurse, ECF No. 72-2 ("Abraham Decl.") at ¶ 1. Plaintiff refers to "LVN Abraham" his opposition to Abraham's motion for summary judgment. ECF No. 77.

[3] Plaintiff's deposition notes that he was also taken to the emergency clinic at the prison's treatment and triage area, where the nursing staff contacted poison control and a doctor. ECF No. 56 ("Pl.'s Dep.") at 15:4-7. Although the doctor initially suggested that the staff transfer plaintiff to an outside hospital, plaintiff was given charcoal and monitored in the emergency room at MCSP for six to seven hours. *Id.* at 15:7-25.

Pl.'s Dep. at 23:20-23.

Plaintiff contends that Nasser was "negligent and reckless" for failing to order charcoal, for failing to order that plaintiff be transported to the triage and treatment center for evaluation, and for ordering just one evaluation of plaintiff's vital signs. FAC at 5. *But see* Pl.'s Dep. 24:24-25 ("All he ordered was that my vital signs were checked every 30—half an hour for four hours."). Plaintiff disputes the accuracy of documents indicating that staff monitored his vital signs every thirty minutes for four hours, and he maintains that his vital signs were measured just one time. *Id.*

Months after the August 3, 2009 incident, plaintiff learned from a correctional officer that Abraham had been terminated for issuing an inmate the wrong medication. *Id.* at 6.

The court previously screened the amended complaint and found that it stated cognizable Eighth Amendment deliberate indifference claims against Abraham and Naseer for failing to provide adequate medical care to plaintiff following the August 3, 2009 incident. ECF No. 16 at 3.[4]

## II. STANDARDS

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994). At bottom, a summary judgment motion asks whether the evidence presents a sufficient disagreement to require submission to a jury.

/////

---

[4] The allegations of a verified complaint may serve as an affidavit for purposes of summary judgment if they are based on personal knowledge and set forth the requisite facts with specificity. *See Human Life of Washington Inc. v. Brumsickle*, 624 F.3d 990, 1022 (9th Cir. 2010).

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thus, the rule functions to "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments). Procedurally, under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson,* 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

A clear focus on where the burden of proof lies as to the factual issue in question is crucial to summary judgment procedures. Depending on which party bears that burden, the party seeking summary judgment does not necessarily need to submit any evidence of its own. When the opposing party would have the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the opponent's claim. *See, e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Rather, the moving party need only point to matters which demonstrate the absence of a genuine material factual issue. *See Celotex*, 477 U.S. at 323-24 ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See id.* at 322. In such a circumstance, summary judgment must be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323.

To defeat summary judgment the opposing party must establish a genuine dispute as to a material issue of fact. This entails two requirements. First, the dispute must be over a fact(s) that is material, i.e., one that makes a difference in the outcome of the case. *Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). Whether a factual dispute is material is determined by the substantive law applicable for the claim in question. *Id.* If the opposing party is unable to produce evidence sufficient to establish a required element of its claim that party fails in opposing summary judgment. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322.

Second, the dispute must be genuine. In determining whether a factual dispute is genuine the court must again focus on which party bears the burden of proof on the factual issue in question. Where the party opposing summary judgment would bear the burden of proof at trial on the factual issue in dispute, that party must produce evidence sufficient to support its factual claim. Conclusory allegations, unsupported by evidence are insufficient to defeat the motion. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Rather, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial. *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076. More significantly, to demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such that a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson*, 477 U.S. at 248, 252. Absent any such evidence there simply is no reason for trial.

The court does not determine witness credibility. It believes the opposing party's evidence, and draws inferences most favorably for the opposing party. *See id.* at 249, 255; *Matsushita*, 475 U.S. at 587. Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences. *American Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir. 1991) (Kozinski, J., dissenting) (citing *Celotex*, 477 U.S. at 322). If reasonable minds could differ on material facts at issue, summary judgment is inappropriate. *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th

Cir. 1995). On the other hand, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). In that case, the court must grant summary judgment.

Concurrent with their motion for summary judgment, defendants advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. ECF Nos. 54, 72; *see Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999); *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

**III.    ANALYSIS**

**A.  Deliberate Indifference**

To succeed on an Eighth Amendment claim predicated on the denial of medical care, a plaintiff must establish that he had a serious medical need and that the defendant's response to that need was deliberately indifferent. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A serious medical need exists if the failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain. *Jett*, 439 F.3d at 1096. Deliberate indifference may be shown by the denial, delay, or intentional interference with medical treatment, or by the way in which medical care is provided. *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).

To act with deliberate indifference, a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847. A physician need not fail to treat an inmate altogether in order to violate that inmate's Eighth Amendment rights. *Ortiz v. City of Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989). A failure to competently treat a serious medical condition,
/////

even if some treatment is prescribed, may constitute deliberate indifference in a particular case. *Id.*

It is important to differentiate common law negligence claims of malpractice from claims predicated on violations of the Eighth Amendment's prohibition of cruel and unusual punishment. In asserting the latter, "[m]ere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle*, 429 U.S. at 105-06); *see also Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004). Additionally, the Ninth Circuit has made clear that a difference of medical opinion is, as a matter of law, insufficient to establish deliberate indifference. *See Toguchi*, 391 F.3d at 1058. "Rather, to prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to [the prisoner's] health.'" *Id.* (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)).

### B. Naseer's Motion for Summary Judgment

#### 1. Naseer's Account

Naseer concedes that he is a physician and surgeon, and that he was working in the treatment and triage area at MCSP on August 3, 2009. ECF No. 54-2 (Naseer Decl.) at ¶¶ 2, 4. According to Naseer, it was not until 2:00 p.m. on that day that a licensed vocational nurse informed him that plaintiff had received and ingested 150 milligrams of morphine instead of his prescribed 50 milligrams of methadone. *Id.* at ¶ 4. "Immediately after being notified," Naseer ordered that staff monitor plaintiff every thirty minutes for his alert level of consciousness and respirations. *Id.* at ¶ 5. Naseer believes that plaintiff was monitored in accordance with that order from 2:05 p.m. to 6:05 p.m. *Id.*

Naseer does not dispute that he did not order liquid charcoal for plaintiff. *Id.* at ¶ 6. But Naseer explains that he did not do so "because, in order to be effective, charcoal has to be administered within two hours from the time of ingestion and [he] was notified over two hours after [plaintiff] had ingested the morphine." *Id.* Naseer also notes that he did not order charcoal

/////

1  because at 2:00 p.m.—when he was first notified of the incident—the nursing staff reported to
2  Naseer that plaintiff was alert and doing well. *Id.*
3        Naseer also suggests that while plaintiff's ingestion of the morphine may have caused
4  plaintiff to feel dizzy and nauseous, 150 milligrams of morphine "is not significant because it is
5  approximately equivalent to the 50 [milligrams] of methadone that [plaintiff] was previously
6  receiving on a regular basis, and further because methadone and morphine are in the same
7  category of narcotics." *Id.* at ¶ 7. Naseer notes that his involvement was limited to speaking with
8  the nursing staff and issuing the order that plaintiff be monitored; Naseer did not himself see or
9  speak with plaintiff on August 3, 2009. *Id.* at ¶¶ 8, 10.

### 2. Plaintiff's Opposition to Naseer's Motion for Summary Judgment

11        Plaintiff disputes the claim that Naseer was not contacted until more than two hours after
12  plaintiff ingested the morphine. ECF No. 59 at 2. Although plaintiff's amended complaint states
13  that he "was presented his noon medication," ECF No. 15 at 2, his opposition states that he
14  "believes that the over-dosing did not happen until approximately 1300 hrs" (i.e., 1:00 p.m.), ECF
15  No. 59 at 2. *But see* Pl.'s Dep. 23:15-19 (stating he received the morphine between 11:00 and
16  1:00). He has submitted documents indicating Naseer learned of the incident as early as 1:00
17  p.m. *See* ECF No. 59 at 9 ("Exhibit E"); *see also* ECF No. 59 at 10 ("Exhibit B") (progress note
18  entry at 2:00 p.m. stating that Naseer was notified of incident).
19        Plaintiff also claims that he "was not alert and well at all that entire day after over-
20  dosing." ECF No. 59 at 2. *But see* Pl.'s Dep. 23:20-23 (stating that he felt "[j]ust a little drowsy"
21  and was not experiencing "serious effects" the morning after ingesting the morphine). Although
22  plaintiff asserts this fact in contesting Naseer's Undisputed Material Fact number 14, it is unclear
23  how the two statements are related or inconsistent with each other. *See* ECF No. 54-1 at 3
24  (Undisputed Material Fact No. 14) ("Dr. Naseer's only involvement regarding this incident was to
25  speak with nursing staff and issuing an order that Mr. Hopkins be monitored on a regular basis for
26  his alert level of consciousness (ALOC) and respirations.").
27  /////
28  /////

Lastly, plaintiff's opposition argues that "other experts are in agreement [] and will testify" that Naseer provided inadequate care. ECF No. 59 at 1 (citing Ex. A3).[5] Exhibit A3 is a progress note from the May 23, 2009 incident. It states that the on-call doctor called poison control and spoke to Dr. Lukey; according to the progress notes, "Dr. Lukey stated to send [plaintiff] to SAH because it[']s [a] large dose." The on-call doctor "stated to send [plaintiff] to SAH code 3 via ambulance . . . ." The progress note then states "called ambulance. Awaiting for transfer to SAH." ECF No. 59 at Ex. A3.

### 3. Analysis

It is undisputed that Naseer was a physician at MCSP and was working in the treatment and triage area on August 3, 2009, that he was informed that plaintiff had consumed 150 milligrams of morphine instead of the prescribed 50 milligrams of methadone, or that he did not order liquid charcoal for plaintiff. It is also undisputed that Naseer ordered at least one evaluation of plaintiff's vital signs. Although plaintiff and Naseer dispute: (1) whether Naseer ordered and "was satisfied with one vital sign evaluation," ECF No. 15 at 6; (2) whether Naseer learned of plaintiff's ingestion of the morphine within two hours of the incident; and (3) whether Naseer should have ordered liquid charcoal for plaintiff, that plaintiff be transported to the triage and treatment center for evaluation, and additional evaluations of plaintiff's vital signs, those disputes are not material. Even assuming that the court should accept plaintiff's version in his opposition brief that the overdose did not occur until 1:00 p.m., rather than plaintiff's version in his sworn deposition that it occurred sometime between 11:00 a.m. and 1:00 p.m., by the time Naseer was notified at 2:00 p.m. plaintiff was conscious and alert. Plaintiff's deposition testimony that he was nonetheless "a little drowsy" (Pl.'s Dep. 23:20-23) does not demonstrate that Naseer was deliberately indifferent to plaintiff's condition. To the contrary, Naseer issued an order to the nursing plaintiff be monitored on a regular basis for his alert level of consciousness and respirations.

/////

---

[5] Plaintiff has not submitted any declarations from his "experts."

Further, Naseer explained that this response was adequate given plaintiff's consciousness and the dose level in question. He explained that 150 milligrams of morphine is approximately equivalent to the 50 milligrams of methadone that plaintiff was previously receiving on a regular basis. While plaintiff takes issue with that opinion, citing a progress note that an on-call physician, Dr. Lukey, at "poison control" had recommended taking plaintiff to a hospital because of the dose amount, plaintiff has not shown that Naseer was deliberately indifferent. At most, plaintiff has shown a difference of opinion on that matter. As noted above, a mere difference of medical opinion is insufficient, as a matter of law, to establish deliberate indifference. *Toguchi*, 391 F.3d at 1058; *Jackson*, 90 F.3d at 332. Because plaintiff has failed to produce evidence sufficient to establish that Naseer was deliberately indifferent to a serious medical need—an essential element of plaintiff's Eighth Amendment deliberate indifference claim—the undersigned recommends that defendant Naseer's motion for summary judgment be granted. *See Celotex*, 477 U.S. at 322.

That plaintiff received the wrong medication twice within three months is certainly concerning. However, the issue presented here is Naseer's response to the August 3, 2009 incident. Plaintiff has not established that Naseer was deliberately indifferent to a serious medical need when responding to that event. Nor has he shown any further involvement by Naseer. As to the incident for which he was consulted, according to Naseer, plaintiff's ingestion of 150 milligrams of morphine was "not significant" given that plaintiff received 50 milligrams of methadone on a regular basis, and because methadone and morphine are in the same category of narcotics. Naseer Decl. at ¶ 7. To use the diction of the Supreme Court: despite knowing the facts, Naseer did not draw the inference that a "substantial risk of harm" existed. *Farmer*, 511 U.S. at 837.

Plaintiff emphasizes the difference between Naseer's response and the treatment plaintiff received after mistakenly ingesting the same amount of morphine on May 23, 2009. ECF No. 59 at 1. But another physician's decision to contact poison control and order an ambulance to transport plaintiff to a hospital, *see id.* at Exs. A1, A3, does not mean Naseer was deliberately indifferent for not taking such measures. As noted above, "to prevail on a claim involving

1  choices between alternative courses of treatment, a prisoner must show that the chosen course of
2  treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious
3  disregard of an excessive risk to [the prisoner's] health.'" *Toguchi*, 391 F.3d at 1058 (quoting
4  *Jackson*, 90 F.3d 332).  Plaintiff has not shown that here.  Although he has identified what
5  additional measures Naseer could have taken (ordering liquid charcoal, that plaintiff be
6  transported to the triage and treatment center for evaluation, and additional vital sign evaluations),
7  plaintiff has not established that Naseer's course of action was medically unacceptable under the
8  circumstances or chosen in conscious disregard of an excessive risk to plaintiff's health.

9     Plaintiff's failure to prove an essential element of his deliberate indifference claim renders
10 all other factual disputes immaterial.  *See Celotex*, 477 U.S. at 322.  Because plaintiff has failed to
11 produce evidence sufficient to establish that Naseer was deliberately indifferent to a serious
12 medical need, the undersigned recommends that defendant Naseer's motion for summary
13 judgment be granted.

14        **C. Abraham's Motion for Summary Judgment**

15    Abraham argues that the court should grant her motion for summary judgment because
16 "the undisputed facts demonstrate that Plaintiff cannot prove [Abraham] violated his rights under
17 the Constitution."  ECF No. 72 at 4.  Abraham's motion is based on her declaration; her
18 declaration, however, does not address the specific factual allegations in plaintiff's amended
19 complaint.  Abraham concedes that on August 3, 2009, she was employed as a licensed
20 vocational nurse at MCSP.  Abraham Decl. at ¶ 2.  But she does not believe that she provided
21 plaintiff the wrong medication on that date, as she "do[es] not have any recollection of ever doing
22 that."  *Id.* at ¶¶ 4-5.  She also states that "it is unlikely that the CDCR would have hired [her] in
23 [her] current position as a licensed vocational nurse" if she provided plaintiff with the wrong
24 medication in 2009.  *Id.* at ¶ 6.  Abraham's declaration does not address the care that plaintiff
25 received after consuming the morphine.

26    Abraham fails to appreciate that whether she provided plaintiff with 150 milligrams of
27 morphine instead of his prescribed 50 milligrams of methadone is not at issue.  Rather, the case is
28 proceeding solely as to plaintiff's allegations regarding the care that he received *after* consuming

the mistakenly prescribed morphine. *See* ECF No. 16 at 3; *see also Irby v. Skagit Cnty. Jail*, 344 F. App'x 371, 372 (9th Cir. 2009) (affirming district court's grant of summary judgment for defendant "because [plaintiff] failed to raise a triable issue that [defendant] *intentionally* gave him the wrong medication") (emphasis added). In short, it is whether Abraham was deliberately indifferent to plaintiff's condition in response to the overdose that is in issue.

Nevertheless, Abraham must be granted summary judgment on the record before the court. Plaintiff has failed to produce evidence sufficient to establish that Abraham's response to the overdose amounts to deliberate indifferent to his medical needs. According to plaintiff, he spoke with Abraham twice after he ingested the morphine. In the first meeting, plaintiff explained his symptoms and Abraham replied that she had provided the correct medication before departing. FAC at 5. During the second exchange, Abraham informed plaintiff that he would not be receiving charcoal because Naseer had only ordered that plaintiff's vital signs be measured. *Id.* Plaintiff has not identified what additional measures Abraham should have taken. To the extent that he believes Abraham should have provided charcoal, transported plaintiff to the triage and treatment center, and evaluated plaintiff's vital signs, plaintiff has not established that Abraham was deliberately indifferent for not taking those measures.

**IV.     RECOMMENDATION**

For the reasons stated above, it is hereby RECOMMENDED that defendants' motions for summary judgment (ECF Nos. 54, 72) be granted and that the Clerk be directed to enter judgment accordingly and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these amended findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections

/////

/////

/////

1 within the specified time may waive the right to appeal the District Court's order. *Turner v.*
2 *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).
3 DATED: May 20, 2015.

  _____
  EDMUND F. BRENNAN
  UNITED STATES MAGISTRATE JUDGE